[S. F. No. 3088.   Department Two.—March 5, 1903.]

In the Matter of the Estate of JENNIE C. McCAULEY, Deceased.  CASSIE WHELAN et al., Appellants, v. THE UNIVERSITY MOUND OLD LADIES' HOME et al., Respondents.

ESTATES OF DECEASED PERSONS—CONSTRUCTION OF CODE—ESTATE OF WIDOW—COMMON PROPERTY—DEED FROM HUSBAND.—The provision of subdivision 9 of section 1386 of the Civil Code, to the effect that any property belonging to the estate of a deceased widow who left no kindred, which was the common property of herself and her deceased spouse, ''while such spouse was living,'' shall go to the next of kin of such deceased spouse, as therein indicated, is to be construed to mean only such common property as was undisposed of at the time of the death of her husband, and not to include common property deeded by the husband to the wife, which became her separate property.

ID.—INHERITANCE BY NIECES.—Under the term of subdivision 9 of section 1386 of the Civil Code, the nieces of the deceased husband may inherit from the deceased widow the common property inherited by her from the deceased husband, notwithstanding there was no brother or sister of the deceased husband living at the date of the widow's death.

ID.—CHARITABLE BEQUESTS TO CORPORATIONS—REDUCTION PRO RATA.— The nieces being legal heirs of the deceased widow, though she left no next of kin, charitable bequests to corporations should be reduced pro rata under section 1313 of the Civil Code, so as to reduce the aggregate thereof to one third.

APPEAL from a decree of the Superior Court of the City and County of San Francisco distributing the estate of a deceased person. James M. Troutt, Judge.

The facts are stated in the opinion.

Walter G. Bonta, for Appellants.

R. H. Rixford, Sheldon G. Kellogg, John Flournoy, George W. Haight, and W. B. Kollmyer, for Respondents.

CHIPMAN, C.—Final distribution of the estate of Jennie C. McCauley, who died testate in the city and county of San Francisco on April 14, 1900, leaving no next of kin. She bequeathed to each of nine individual persons, and also to each of five charitable corporations (respondents), a money legacy. The money bequeathed to charity amounted to $30,-000, and the other money legacies amounted to $32,250, or $62,250 in all. The total value of the distributable estate was $67,528.95, consisting of cash ($53,028.95) and certain real property specifically devised. At the hearing of the petition the individual legatees applied to the court for an order directing the executors to reduce the total sum of the legacies to said corporations to one third of the total value of the distributable estate, and to pay to said corporations such one third and no more. The money legacies were in excess of the available cash to meet them, and the court ordered all paid on an equal footing, and each was made to abate 14.61 per cent of its face value. The corporations thus received in the aggregate $25,615.40, or $3,105.75 more than one third of the distributable estate. The individual legatees and the executors appeal.

By section 1313 of the Civil Code charitable corporations cannot take bequests or devises by will which "shall collectively exceed one third of the estate of the testator leaving legal heirs, and in such case a *pro rata* deduction from such devises or bequests shall be made so as to reduce the aggregate thereof to one third."

Mrs. McCauley died the widow of William A. McCauley, who left two nieces surviving both McCauley and his widow.

It is claimed by appellants that, had Mrs. McCauley died intestate, these nieces would have inherited any property

which "was common property of such decedent and her deceased spouse, while such spouse was living," as provided in subdivision 9 of section 1386 of the Civil Code, which reads: "If the decedent be a widow, . . . and leave no kindred, and the estate, or any portion thereof, was common property of such decedent and . . . her deceased spouse, while such spouse was living, such common property shall go . . . to the lawful issue of any deceased brother or sister of such deceased spouse, by right of representation." Appellants' contention is, that if any of the decedent's property of which she died seised was common property at any time before the death of her spouse, it must be so treated, regardless of any gift to her by her husband in his lifetime; and as her husband left legal heirs, and she left no kindred, such property must be taken into account in determining the "one third of the estate of the testator leaving legal heirs." (Civ. Code, sec. 1313.) Appellants offered to prove, but were refused the evidence, that the Mason-Street property (the proceeds of the sale of which constituted nearly the entire distributable estate) was purchased with money accumulated by the joint efforts of decedent and her late husband. It appears from the evidence that this property was conveyed to Mrs. McCauley March 30, 1887, by one Crew, "for and in consideration of the sum of five dollars in gold coin . . . to him in hand paid by the said party of the second part out of her sole and separate property and estate," and in the *habendum* clause it was recited as follows: "To have and to hold, . . . unto the said party of the second part, her heirs and assigns forever, as and for her sole and separate property and estate." On the twenty-fifth day of February, 1891, decedent's husband conveyed to her this same property "for and in consideration of love and affection." Mr. McCauley died testate July 1, 1898, leaving a small amount of property, which was distributed to Mrs. McCauley, but did not include the Mason-Street property, nor was it mentioned in his will nor in the inventory of his estate. The deed of Crew to Mrs. McCauley "constituted the premises her separate estate." (*Swain* v. *Duane*, 48 Cal. 358; *Shanahan* v. *Crampton*, 92 Cal. 9; *Sanchez* v. *Grace M. E. Church*, 114 Cal. 295.) If the husband had a community interest in the property which, by any form of action, he could have had declared or decreed

to him, he parted with it when he conveyed to his wife. Thenceforward, so far as concerned the husband, the property became the separate estate of the wife, and her title could not be called in question by him unless he was induced by fraud or undue influence or by some such means to part with his interest, if he had any. But appellants claim that the purchase from Crew was with the money of the community, and that it was admissible to show this fact, if the property was common property at any time while decedent's spouse was living. Conceding, without deciding, that in this proceeding the heirs of the husband can be heard to dispute the effect of the Crew deed, and the husband's deed to his wife, we cannot give subdivision 9 of section 1386 of the Civil Code the construction contended for. To do so would deny to the husband the right to convey to his wife by gift or for a consideration, except subject to the claims of the husband's heirs in the contingency mentioned in the section; it would also deny to the wife the right of absolute testamentary disposition if she had no kindred. According to appellant's contention, the right of these nieces attached in 1887, when the property was conveyed to Mrs. McCauley, and continued after the husband had conveyed to his wife any interest he may have had, and became operative upon the death of the wife leaving no kindred. We think the more reasonable construction of the words "while such spouse was living" is, that the common property referred to must be such as remains undisposed of by such spouse at his or her death. It cannot mean "if the decedent . . . leave no kindred, and the estate" happened to be at some time "common property of such decedent and his or her deceased spouse," but had, long before the death of such spouse, been conveyed by him or her to decedent, that in case of the decedent's intestacy the property would go to the deceased spouse's heirs; and this must be so in the present case, if for no other reason than that the property had ceased to be the common property of the "deceased spouse" in his lifetime and had become the separate property of his wife. The right of the husband to convey property to his wife is as complete as his right to convey to any other person. (Civ. Code, sec. 58; *Hamilton* v. *Hubbard,* 134 Cal. 606; *McDougall* v. *McDougall,* 135 Cal. 316.)

In this state a husband and wife may by contract between

them alter their relations as to property; and they may by valid agreement transmute their separate estate into community property. (*Yoakam* v. *Kingery,* 126 Cal. 30.) And for like reason may transmute their community property into the separate property of one of the contracting parties.

We are not concerned here with the rights of creditors to call in question a deed of gift, for no such case is presented. The nieces of the deceased husband of Mrs. McCauley were not legal heirs of the testatrix in respect of the Mason-Street property, within the meaning of sections 1313 and 1386 of the Civil Code, because it was her separate property, and hence it was not error to exclude the evidence offered.

2. There was some property of the estate of William Mc-Cauley which his executrix, the testatrix here, described in her petition for probate of his will and returned in her inventory as common property,—namely, certain Los Angeles real estate, which was sold by testatrix's executors for $162.50; also certain promissory notes, payable to her husband, aggregating $300; also her husband's watch, which sold for $37, making in all $499.50. In the absence of any evidence to the contrary, we must accept the sworn declaration of the testatrix as to the character of this property.

Respondents say that these nieces do not inherit under subdivision 9 of section 1386 of the Civil Code, because no brothers or sisters of the deceased spouse of McCauley were living at the time of Mrs. McCauley's death. This view of the statute is based on an alleged application of the rule laid down *In re Ingram,* 78 Cal. 586,[1] and *In re Carmody,* 88 Cal. 616, construing subdivisions 2 and 5 of section 1386. These cases throw no light on subdivision 9. This subdivision plainly provides that in a certain contingency the community property must go to "the brothers and sisters of such deceased spouse, in equal shares, and to the lawful issue of any deceased brother or sister, by right of representation."

It is hardly necessary to add that Mrs. McCauley might have left legal heirs, although she left no next of kin. The statute we have been considering made these nieces legal heirs of the property which belonged to the community at the death of testatrix's spouse.

It is also urged by respondents that there is no evidence that

[1] 12 Am. St. Rep. 80, and note.

the proceeds of this common property are part of the distributable estate; that these particular proceeds may have been paid out for debts and expenses of administration. There was a large surplus after all debts and expenses were paid. Had Mrs. McCauley died intestate, leaving no kindred, these nieces of her husband would have been entitled to this common property and the debts and expenses should have been paid out of a portion of the remaining $67,000, a large part of which is the subject of her numerous bequests. This common property, trifling though it be in comparison with the distributable estate, must yet be taken into account. Respondents contend that "if this small amount of community property remained to be distributed, at most, that amount could go to these nieces under subdivision 9 of section 1386, and not any portion of the money, the proceeds of the separate estate of the decedent." In this we agree with respondents, and as we think this common property remained on hand at the time of distribution, the decree should award it to these nieces. In doing this a slight increase will be required in the per cent to be abated from the bequests, but, for reasons above given, no change in the decree will be necessary in respect of appellant's claim that the Mason-Street property is common property.

It is advised that the decree be so modified as to conform to this opinion and otherwise to stand affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the decree is so modified as to conform to this opinion and otherwise stands affirmed.     McFarland, J., Lorigan, J., Shaw, J.

Hearing in Bank denied.