[Civ. No. 5983. First Appellate District, Division Two.—February 2, 1928.]

LEON JACQUE DONZE, Respondent, v. HATTIE GENEVIEVE DONZE, Appellant.

W. Preston Butcher, Jr., and Atwell Westwick for Appellant.

J. W. Smith for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from that portion of an interlocutory judgment of divorce decreeing a certain house and lot standing in the name of appellant to be the community property of the respective spouses.

Appellant and respondent intermarried at Santa Barbara on July 29, 1909. In consideration of the sum of $100, the mother and father of respondent executed a deed of conveyance April 27, 1922, to lot two, block 102, of said city of Santa Barbara, to appellant, Hattie Genevieve Donze *"as her separate property."* A dwelling-house was thereafter constructed on this lot at a cost of $2,800, which was borrowed from the building and loan association on a note and mortgage executed by these parties as a lien upon said premises. This money was subsequently paid in installments from the earnings acquired during coverture. Domestic trouble arose. In August, 1924, respondent brought suit against the appellant for divorce, alleging that said lot was their community property. The appellant answered denying this allegation, and upon the contrary alleged that it

was her separate property, and in a cross-complaint she prayed for a divorce on her part. Upon trial a divorce was denied respondent, but appellant was granted an interlocutory decree on the ground of extreme cruelty, and she was awarded the custody of their two minor children, and $60 per month alimony and maintenance, together with the temporary right of occupancy of said premises. The court also found that the house and lot in question was community property, and awarded it to the spouses as "tenants in common." An appeal was taken from that portion of the decree which finds that this house and lot is community property, on the ground that this finding is unsupported by the evidence, and that oral testimony as to the title was incompetent to vary the terms of the deed.

The evidence is without conflict to the effect that all of the purchase price of said lot, together with the cost of construction of the dwelling-house was paid from community funds; the deed was executed by the father and mother of respondent to the appellant. Following the name of the grantee in this deed was the recital that the lot was conveyed "as her separate property." This deed was delivered to the appellant, who had it recorded, and afterward kept it among her private papers; the respondent never afterward saw the instrument. Over the objection of appellant that the evidence was incompetent and tended to vary the terms of a written instrument, the respondent was permitted to testify in effect that the deed was taken in the name of his wife as a matter of convenience. He said: "It was deeded to my wife just simply in case—in the work I am in —driving a machine around, in the event anything should happen—my death or anything, there would be nothing in the way of red tape or anything, of her going ahead and proving ownership of the property. . . . We talked it over and it was just simply signed in her name. . . . I didn't know that it was in her name as separate property. . . . We agreed that it would be put over (in her name) in case anything should happen. . . . If anything happened to me there would be no argument so far as red tape of her getting hold of the property—her and the children. . . . I think she said something to the effect that parents of the husband could come in on his half of the property if it was community property. . . . (I said) rather than have an

argument we would fix it so she and the children could have it all. . . . I told my father to have the property made out in her name.''

Appellant said the respondent told her the reason he had the deed executed in her name was ''just so the children and I could always have a home. . . . He said, if anything should happen to him, we would have it always. . . . He said he wanted the property in my name, and the children's so that his folks could never come in on it, or anyone else— that it would always be our property.''

The evidence is undisputed that the deed was executed to appellant with the consent and at the request of respondent. There was no contention in this case that it was executed through fraud or mistake.

█  Where land is conveyed from a husband to his wife the presumption is that it was intended as a gift. So, also, where property is conveyed to a wife, from a third party, with the knowledge and consent of the husband, whether the consideration is paid by the husband from his separate property or from their community property, the presumption is that it was intended as her separate property. (Civ. Code, sec. 164; *Sanchez* v. *Grace M. E. Church*, 114 Cal. 295 [46 Pac. 2]; *Stafford* v. *Martinoni*, 192 Cal. 724 [221 Pac. 919]; 13 Cal. Jur. 854, sec. 50.) The intention must ordinarily be inferred from all the surrounding circumstances, including the acts, declarations, and conduct of the interested parties at the time of the transaction. (*Gilmour* v. *North Pasadena L. Co.*, 178 Cal. 6 [171 Pac. 1066]; *Fanning* v. *Green*, 156 Cal. 279 [104 Pac. 308]; *Cohn* v. *Smith*, 37 Cal. App. 764 [174 Pac. 682].) But where a deed of conveyance to real property is made from a third party to the wife with the knowledge and consent and pursuant to directions from the husband, and the deed contains an express declaration that the property is conveyed to her as her separate property, regardless of whether the consideration is paid from his separate property or from the community funds, the presumption that it was intended as a gift to the wife is conclusive, except when that intent is challenged on the trial by an issue of fraud or mistake. (13 Cal. Jur. 855, sec. 50; *Miller* v. *Brode*, 186 Cal. 409 [199 Pac. 531]; *Estate of McCauley*, 138 Cal. 546 [71 Pac. 458]; *Swain* v. *Duane*, 48 Cal. 358.)

In the case of *Miller* v. *Brode, supra,* it is said: " . . . The deed by which the ranch was acquired, conveyed it to the decedent as sole grantee, and described it as her separate property, and was so made with the consent of her husband, who participated in the transaction. This definitely establishes the character of the property as her separate property. In *McComb* v. *Spangler,* 71 Cal. 418 [12 Pac. 347], it was held that where a third person conveys property to a wife as her separate property, there is but a *prima facie* presumption that it is taken by her as such. This may be true where, as in that case, it does not appear that the deed was made with the husband's consent. But where, although the property is purchased with community funds, it is conveyed to the wife with the husband's consent by a deed expressly describing it as her separate estate, it is as if the husband himself had conveyed community property to her by deed expressing that she took it as her separate estate. Such a conveyance would be nothing more nor less than an express gift by the husband to the wife of community property. (*Swain* v. *Duane,* 48 Cal. 358; *Shanahan* v. *Crampton,* 92 Cal. 9 [28 Pac. 50].) There is no impediment to a husband making such a gift if he desires. If he does it, the property at once becomes the wife's separate property, and the effect of the conveyance in this respect cannot be avoided except by avoiding the conveyance itself. This, of course, cannot be done except for fraud, mistake, or some similar ground. In the absence of some such ground for setting aside the transaction it is wholly immaterial that the property was community property before the husband conveyed it to the wife, or in case it were conveyed to her by a third person that the consideration given for it was community property. Its character is changed at once by the conveyance to the wife as her separate property either by the husband directly or by a third person with his consent."

The foregoing language seems to fit the instant case exactly. This deed was made to the wife at the request of the husband, and it recited that the property was conveyed to appellant "as her separate property." There was no fraud or mistake charged with relation to its execution. Under such facts the house and lot in question is conclusively presumed to be the separate property of the appellant.

■ The evidence as to the intent with which the deed was executed in the name of the appellant varied the terms of the written instrument, and in the absence of appropriate allegations, was incompetent. The objection to this evidence should have been sustained. No rule of evidence is more firmly established than the one that "parol evidence cannot be received to contradict, vary, add to or subtract from the terms of a valid written instrument." (10 Cal. Jur. 916, sec. 186; 10 R. C. L. 1016, sec. 208; Jones on Evidence, 3d ed., 656, sec. 434.) There are, however, equally well-recognized exceptions to this rule, as, for instance, where an instrument has been procured through fraud, coercion, undue influence, or mistake. (10 R. C. L. 1056, sec. 251.) ■ But he who seeks to set aside an instrument which is valid on its face, upon any of these grounds must specifically allege the facts upon which he relies. (12 Cal. Jur. 800, sec. 62; 10 Standard Ency. of Proc. 49, sec. 8; *Hammond* v. *McCullough,* 159 Cal. 639, 649 [115 Pac. 216].)

■ A complaint in a suit for divorce is insufficient to raise the issue of an alleged fraudulent conveyance from a husband to his wife, or from a third person to the wife, which merely recites the existence of the marital relationship and the possession of the community property by the spouses. Such general allegations utterly fail to warn the accused that she will be expected to defend against the serious charge of fraud. Regardless of the existence of fiduciary relationship, one who is accused of fraud or undue influence is entitled to be informed of the charge by specific averments which may enable him to refute the charge and adequately prepare his defense. (12 Cal. Jur. 800.) It is true that in transactions between a husband and wife the law presumes the existence of confidential relationship. (Civ. Code, sec. 158.) This fiduciary relationship also precludes either spouse from procuring an unfair advantage over the other by means of fraud, mistake, or undue influence. During the existence of this relationship, where an unfair advantage has been obtained, under appropriate pleadings, the transaction will be deemed to have been secured without consideration and by means of undue influence. (Civ. Code, sec. 2235; 13 Cal. Jur. 860, sec. 54.) Where such undue influence and advantage is alleged, the burden is cast upon him who has the advantage to show

that it was fair and free from fraud or undue influence. (13 Cal. Jur. 860, secs. 54–56; *Locke Paddon* v. *Locke Paddon*, 194 Cal. 73, 80 [227 Pac. 715]; *Henley* v. *Bursell*, 61 Cal. App. 511, 516 [215 Pac. 114]; *Williams* v. *Williams*, 41 Cal. App. 721 [183 Pac. 301]; *Estate of Cover*, 188 Cal. 133, 143 [204 Pac. 583].) But the mere existence of the relationship of husband and wife does not create a presumption of fraud or undue influence, in the absence of the procuring of an undue advantage, nor does it constitute a *prima facie* showing of such conduct. Before this presumption may be indulged it must appear that the marital confidence was violated and that an undue advantage was thereby secured. (*Yordi* v. *Yordi*, 6 Cal. App. 20 [91 Pac. 348]; *Dimond* v. *Sanderson*, 103 Cal. 97 [37 Pac. 189]; 13 Cal. Jur. 862, secs. 55, 56.) Clearly, if a wife were to obtain, without consideration, an absolute conveyance of property from her husband, by means of false promises which she did not intend to perform, the transaction would constitute actual fraud. And if the wife obtained, without consideration, an absolute conveyance of property from her husband upon a promise to reconvey it, and, subsequently, upon request failed and refused to do so, her conduct would constitute constructive fraud. (*Brison* v. *Brison*, 75 Cal. 525 [7 Am. St. Rep. 189, 17 Pac. 689].) But, manifestly, relief from such a fraudulent transaction may be secured only in a proceeding which presents the issue of fraud by specific pleadings. We have been pointed to no decision in the California Reports, nor elsewhere, holding that this serious charge of fraud may be raised without pleading the fiduciary relationship, the circumstances of the fraud, and the undue advantage secured. Upon the contrary, the cases cited indicate that the issues of fraud, lack of consideration, and undue influence were invariably raised by definite pleadings. In *Brison* v. *Brison, supra,* it is said: "The complaint shows that the promise upon which the plaintiff relies was false, and in bad faith, and made with intent to deceive." In the case of *Falk* v. *Turner*, 101 Mass. 496, therein quoted with approval, it is said: "It is averred that the plaintiff had at all times confidence in his wife, and in her devotion and fidelity to him, and that he made the deed having confidence in his wife, and in her representations

and promises, and relying upon the same." In *Kohn* v. *Kempner*, 59 Cal. App. 621 [211 Pac. 805], the court said: "Appellants contend that the complaint is insufficient because it does not allege that the plaintiff relied upon the promise of his wife to reconvey, or that she would perform it. The allegation in this connection is that the conveyances were made to Mrs. Kohn upon her express promise to reconvey to plaintiff upon demand." In *Feeney* v. *Howard*, 79 Cal. 525 [12 Am. St. Rep. 162, 4 L. R. A. 826, 21 Pac. 984], where a fiduciary relationship existed, and an action was brought to set aside a deed of conveyance upon the ground of fraud, it was held that both the relationship and the fraud must be alleged. In that case evidence of fraud was received over objection, and the case was therefore reversed. The court said: "No actual fraud was alleged. A material ingredient of actual fraud is the fraudulent intent, and this must be alleged as one of the facts constituting the fraud. . . . The facts constituting fraud must be averred in cases of constructive as well as actual fraud. *Golson* v. *Dunlap*, 73 Cal. 164 [14 Pac. 576]." We therefore conclude that where a deed of conveyance is made to a wife, in which deed the character of the property is specifically declared to be "separate property," a rebuttable presumption is thereby created to the effect that it is her separate property, and that she holds the legal title thereto. This presumption may be overcome by the husband only on the theory that the deed is not what it purports to be, and was executed through fraud, mistake, or undue influence and that the wife therefore holds but an equitable title for the benefit of the community. The invariable rule under such circumstance requires these issues to be raised by appropriate pleadings.

For the foregoing reasons the portion of the judgment determining property rights is reversed, and the cause is remanded for a new trial upon the sole issue as to the property rights. Inasmuch as the trial court was of the opinion that although the legal title to the property was in the wife, yet she held it for the community, and that the equitable title was in the community, it is directed that the plaintiff be permitted to amend his complaint upon timely and proper application therefor adding appropriate allegations

of fraud, mistake, or undue influence, presenting the issue of the equitable ownership of the property, if he be so advised.

Sturtevant, J., and Koford, P. J., concurred.