[Civ. No. 36386. Second Dist., Div. One. Jan. 21, 1971.]

MARILYN L. WILLIAMS, Plaintiff and Appellant, v.
SYDNEY M. WILLIAMS et al., Defendants and Respondents.

## COUNSEL

Silverton, Ruderman & Graf and Horace A. Ruderman for Plaintiff and Appellant.

Sydney M. Williams, Arnold Candler and Bernard Ratner, in propria persona, for Defendants and Respondents.

## OPINION

**GUSTAFSON, J.**—Plaintiff wife and defendant husband were married May 8, 1955. Almost 13 years later the marriage had deteriorated to the point where divorce was imminent. The husband thereupon withdrew $39,251.50 from a savings and loan association account and received $73,237.76 from the dissolution of a stock account at the office of a stock broker. The failure of the trial court to make any findings with respect to this total sum of $110,489.26 is the principal point giving rise to this appeal.

On April 19, 1968, the wife brought a divorce action against the husband, but it was shortly thereafter dismissed. The present action for divorce was

brought by the wife May 27, 1968. The husband cross-complained for a divorce and upon trial the court granted a divorce to each party. The wife was awarded alimony in the sum of $1.00 per year. No issue of child support was involved. One parcel of real property was found to be the husband's separate property. Five other parcels of real property were found to be community property and the wife was awarded an undivided one-half interest in each parcel. Disposition of life insurance policies, automobiles, clothing and other relatively insignificant items is not attacked.

On July 17, 1968, the court appointed an accountant "to audit the books and financial records of [husband and wife] commencing January 1, 1964, to" July 17, 1968. The husband was "restrained from selling, transferring, hypothecating, liening, encumbering or otherwise assigning the community property of the parties except in the ordinary course of business or for the necessities of life."

The wife's notice of appeal states that she is appealing from that portion of the judgment which fails "to determine an accounting of, or to require [the husband] to account for monies and assets of the community of the parties . . . , which assets [the husband] had in his possession, and under his management and control, which assets and monies are not determined, accounted for, or distributed by the said Interlocutory Judgment of Divorce herein." While not stated properly, it is evident that the wife is actually appealing from that portion of the judgment disposing of the community property. ■ Since each party was awarded a divorce, the court was required under the law then applicable to equally divide the community property. (*De Burgh* v. *De Burgh* (1952) 39 Cal.2d 858 [250 P.2d 598].) The wife's claim is that she was not awarded one-half of the community property since she was awarded no part of the $110,489.26 referred to above. We treat the notice of appeal liberally as one appealing from that portion of the judgment awarding the community property. (Cal. Rules of Court, rule 1(a).)

The first question is whether the missing cash or any part of it was community property. Generally speaking, all property of a spouse owned prior to marriage and all property acquired after marriage by gift, bequest, devise or descent is separate property (Civ. Code, §§ 5107, 5108), and all other property is community property. (Civ. Code, § 5110.) ■ While one who asserts that property is community has the burden of proving it (*Estate of Nelson* (1930) 104 Cal.App. 613 [286 P. 439]), when a wife in a divorce action shows that property was acquired during marriage the presumption is that the property is community in nature and if the husband claims that the property is his separate property, he has the burden of overcoming the presumption. (*See* v. *See* (1966) 64 Cal.2d 778 [51 Cal.

Rptr. 888, 415 P.2d 776].) ■ The wife's brief in this case simply assumes that the missing cash was community property and does not refer us to anything in the record supporting that assumption. The husband's brief, on the other hand, admits that some of the missing cash was community property, but we are not told what the proportion is.

The record in this case is voluminous. The clerk's transcript consists of 779 pages. While the reporter's transcript consists of 335 pages, the record also includes lengthy depositions by both husband and wife amounting to more than 700 pages. ■ It is incumbent upon the parties to an appeal to cite the particular portion of the record supporting each assertion made. It should be apparent that a reviewing court has no duty to search through the record to find evidence in support of a party's position. ■ In the light of the husband's admission, however, we must assume that the record contains evidence that an unspecified amount of the referred to cash was community property.

■ This brings us to two further questions. Former section 146 of the Civil Code, applicable when this case was tried, required "disposition of the community property" existing at the time of the dissolution of the marriage. The first question is whether, assuming that some or all of the $110,489.26 available to the husband immediately prior to the filing of this action was community property, any of it still existed as such at the time of the dissolution of the marriage. The second question is whether, if the community property portion of the cash was not shown to have been disposed of for community purposes, the wife should have a right to a judgment against the husband in this action for her share of it.

The first of these two questions is a question of fact which should have been resolved by the trial court. The evidence with respect to the $110,489.26 was that the accountant appointed by the court was able to trace $22,126 as having been spent by the husband on mortgage payments, taxes and other expenses on real property. Whether any of this amount was spent on the real property which was found to be the separate property of the husband is not clear from the record. The accountant further found that $39,000 was paid by the husband to five persons. The husband claimed that the payments were made to discharge debts created by loans from those individuals to him. The court did not find that the debts actually existed and, if they did, that they were community debts. The accountant was unable to find what happened to the remaining $49,363.26. The husband testified that he spent this amount in the year preceding trial for ordinary living expenses and that he had no money left. The trial court made no finding with respect to the disposition of this $49,363.26.

■■ The question of what if anything remained of such portion of the $110,489.26 as was community property was clearly raised by the pleadings and the evidence. By submitting proposed findings to the court, the wife satisfied section 632 of the Code of Civil Procedure[1] placing upon the party desiring findings the burden of requesting them. Failure of the trial court to make findings with respect to the $110,489.26 was error and we therefore remand with instructions to the trial court to make findings on the issue under discussion.

It may well be that the findings which we have instructed the trial court to make will obviate the necessity of resolving the second of the two questions we have posed above. If the court finds that all of the community portion of the $110,489.26 was expended for proper community purposes, and that the remainder was the husband's separate property, then the second question need never be reached. If, on the other hand, the court determines that all of the community property was not used for authorized purposes, the second issue will be squarely raised. On the possibility that the second issue will be reached, we think it proper to indicate our views on it.

As to the second question, the extent of a husband's duty to his wife with respect to community property has not been uniformly or satisfactorily defined by the cases. In *Fields* v. *Michael* (1949) 91 Cal.App.2d 443 [205 P.2d 402], the wife was permitted to recover from the estate of her deceased husband half of the value of gifts of community personal property which the husband made without the consent of the wife while he was living. The community property was treated as though it were the corpus of a trust of which the husband was the trustee. In *Vai* v. *Bank of America* (1961) 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247] the husband was said to have the "duties of a fiduciary" with respect to community property. ■ But the husband is the manager of the community property (Civ. Code, § 5105) and, except as specifically prohibited by statute, he may do with the community personal property what he could do with his separate estate. (Civ. Code, § 5125.) Although a trustee or a fiduciary might be personally liable for a loss sustained by virtue of an improvident in-

[1]The 1968 Legislature rewrote section 632 of the Code of Civil Procedure in order to place upon the party desiring findings the burden of requesting them in all cases. Under prior law findings were required in actions in superior court unless waived, although the present rule applied to actions tried in municipal court. Since the section as rewritten governs all cases in which the trial court's announcement of intended decision occurred on or after January 1, 1969, it is applicable here. We do not read the section in its new form as changing prior law as to the effect of a failure to make findings where findings are required. Under prior law, if the trial court rendered judgment without making findings on all material issues, the judgment was subject to reversal on appeal. (See, e.g., *Duff* v. *Duff* (1967) 256 Cal.App.2d 781 [64 Cal. Rptr. 604].)

vestment in speculative stock, we question whether a husband is liable to his wife for a loss sustained under those circumstances.

In *White* v. *White* (1938) 26 Cal.App.2d 524 [79 P.2d 759] the court rejected the husband's argument that the trial court had no jurisdiction to render a personal judgment in favor of the wife for community income disposed of by the husband "regardless of the fact that no satisfactory account has been made by him of such funds." The court stated: "Where the handling of the community funds is entrusted by law to the husband, a certain amount of precaution devolves upon him to keep an approximately accurate account of their disbursements . . . or to take the legal consequences of being unable to satisfactorily account therefor." (Accord: *Pope* v. *Pope* (1951) 102 Cal.App.2d 353 [227 P.2d 867].) We suspect that it would be extremely rare to find a man who has been married for many years who can account for every cent of his income during the marriage. Again, we question the wisdom of requiring the husband at his peril to be a book-keeper.

Easier to accept is the proposition that if the husband uses community property for the purpose of preserving or improving his own separate property, the wife is entitled to be reimbursed for her share. (*Gelfand* v. *Gelfand* (1934) 136 Cal.App. 448 [29 P.2d 271]; *Provost* v. *Provost* (1929) 102 Cal.App. 775 [283 P. 842].)

The *Vai, Fields, Provost* and *White* cases were cited without disapproval in *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557 [63 Cal.Rptr. 13, 432 P.2d 709] where, however, the husband's duties were described as "analogous to those of a partner; he cannot obtain an unfair advantage from the trust placed in him as a result of the marital relationship." It would seem that a husband's duty not to obtain an unfair advantage over his wife by reason of his control of the community property does not require that the husband be as prudent as a trustee or that he keep complete and accurate records of income received and disbursed.

But here we are not concerned with the disposition of community property many years prior to a divorce action. The $110,489.26 in dispute here was intact immediately prior to the filing of the action. Under these circumstances, the husband would obtain "an unfair advantage" over his wife if he is not required to account for that portion of the money which was community property and to reimburse the wife for her share of any of the community property not shown to have been used for community purposes.

While we have referred only to the $110,489.26 available to the husband immediately prior to the filing of the divorce action, the wife points out that other sums of money thereafter became available to the husband from

other sources. The husband on the other hand points out that the accountant appointed by the court to audit the parties' financial records did not purport to account for all disbursements made by the husband. Since we conclude that the portion of the judgment disposing of the community property must be reversed, as already indicated, retrial of the issue of community property will not be limited to the item of $110,489.26, but will include all sums of money received and disposed of by the husband after April 1, 1968, when the divorce action was imminent.

Two of the persons (Candler and Ratner) who received money from the husband purportedly as repayment of loans made by them to the husband were made defendants in the action. The wife appeals from that portion of the judgment decreeing that she take nothing by reason of her complaint against defendants Candler and Ratner. We explain why we affirm that portion of the judgment.

Other than the husband, the complaint names as defendants "Does I through XX." Defendants Candler and Ratner were served as "Does" long after the last payment to either of them. The only relief sought by the complaint against the "Does" was an order enjoining them from selling, transferring, conveying, assigning or otherwise disposing of or encumbering all or any part of the community property. Assuming that the cash received by defendants Ratner and Candler was community property, no money judgment against either defendant could have been rendered because none was sought and no injunction against either defendant could have been issued because there was no showing that either defendant retained the funds received from the husband.

That portion of the judgment disposing of the community property is reversed and the cause is remanded for further proceedings in accordance with the views expressed herein. In all other respects, the judgment is affirmed. The wife shall recover her costs on appeal from the husband and defendants Ratner and Candler shall recover their costs on appeal from the wife.

Wood, P. J., concurred.

THOMPSON, J.—I concur in the result reached in the majority opinion. I disagree, however, with the reasoning of that portion of the opinion which discusses the issue of the wife's right to any part of the $110,489.26 not shown to have been expended for community purposes. In my view, the question is one of burden of proof and of producing evidence. In a dispute over disposition of property in a divorce action, the wife has the burden of proof of establishing the existence of community property, and except as

she may be aided by presumptions must produce evidence which carries that burden. (*Estate of Nelson,* 104 Cal.App. 613 [286 P. 439]; *See* v. *See,* 64 Cal.2d 778 [51 Cal.Rptr. 888, 415 P.2d 776].)

Where, as here, the wife has concededly established the existence of community assets, has established that certain of those assets are missing, and has presented evidence from which it may be inferred that the husband wrongfully disposed of them, she has, in my opinion, met her burden of proof. The issue then shifts to the validity of dispositions of community property by the husband. On that issue, whether dispositions of community property by the husband are proper on the one hand or fraudulent or illegal on the other, I think the better rule would place the burden of producing evidence of the nature of the dispositions upon the husband. It is appropriate to place the burden of producing evidence upon the party who has access to the facts where those facts are inaccessible to the other party to the litigation. (See *Fowler* v. *Seaton,* 61 Cal.2d 681, 687 [39 Cal.Rptr. 881, 394 P.2d 697].) In the situation here present for decision, the husband, as manager and controller of the community property, has access to the facts from which it may be determined whether a disposition of community assets by him was proper or improper. Conversely, the wife, as the passive beneficiary of the husband's management of community property, has little if any access to those facts.

The applicability of the principle of burden based upon superior knowledge of the facts to the situation of the case at bench is strongly indicated by the decision of our Supreme Court in *See* v. *See, supra,* 64 Cal.2d 778. While *See* involves the problem of commingling of community property with separate property of the husband and not the question of unexplained disappearance of community funds, the court rationalizes its decision denying the husband the ability to rebut commingling by establishing an excess of community expenses over community income by reference to the consequences of the husband's right of management and control of the community property. (64 Cal.2d 778, 784; see also *Weinberg* v. *Weinberg,* 67 Cal.2d 557, 563 [63 Cal.Rptr. 13, 432 P.2d 709]; *Vai* v. *Bank of America,* 56 Cal.2d 329, 337 [15 Cal.Rptr. 71, 364 P.2d 247]; *White* v. *White,* 26 Cal.App.2d 524, 529 [79 P.2d 759]; *Pope* v. *Pope,* 102 Cal.App.2d 353, 359 [227 P.2d 867].)

I would instruct the court on retrial to proceed in accord with the principles of burden of proof and of producing evidence recited in this concurring opinion.